IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAMELA SKOFF, | Case No.: 24-cv-10426 |
| PLAINTIFF | |
| v. | Hon. Thomas M. Durkin |
| NCB MANAGEMENT SERVICES, INC.; | |
| DEFENDANT | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff Pamela Skoff, by and through counsel, submits this Response in Opposition to the Motion to Dismiss filed by NCB Management Services, Inc. ("Defendant") and in support thereof respectfully states:

**I.  INTRODUCTION**

Following the Court's ruling on Plaintiff's Motion to Remand, the only remaining claims before the Court are Plaintiff's: (1) Fair Debt Collections Practices Act (the "FDCPA") claim under section 1692e(8) for Defendant's failure to communicate Plaintiff's dispute of the underlying debt (the "Debt") when Defendant updated its reporting to the credit reporting agencies (the "CRAs"), and (2) Illinois Collection Agency Act claim.

Defendant's sole argument seeking dismissal of Plaintiff's section 1692e(8) claim is that after Defendant responded to Plaintiff's Dispute Letter, she did not immediately notify it that she continued to dispute the debt. Defendant's argument is without merit. First, Defendant did not afford Plaintiff an opportunity to notify it that she continued to dispute the debt before it communicated to the CRAs that her dispute was resolved, as Defendant sent Plaintiff the Collection Letter and communicated to the CRAs that it had resolved her dispute on the same day.

1

Plaintiff was not even aware of Defendant's response to her dispute by the time Defendant communicated to the CRAs that the account was "previously in dispute" and that the dispute was "now resolved." Further, Defendant relies heavily on the District Court's ruling in *Wood v. Sec. Credi Servs.*, a ruling that was subsequently reversed by the Seventh Circuit based on the precise arguments that Plaintiff sets forth in her Amended Complaint.

## II. FACTUAL BACKGROUND

Plaintiff incurred a consumer debt (the "Account" or "Debt")) originally owed to Republic Bank & Trust Company (the "Original Creditor"). FAC, ¶¶14-15. Plaintiff defaulted on the Debt, the Original Creditor charged off the debt. FAC, ¶16. After charge-off, the Original Creditor sold the Account to Defendant on the secondary market for pennies on the dollar. FAC, ¶17. Defendant is a debt collector as that term is defined under 15 U.S.C. 1692a(6). FAC, ¶¶18-19. After acquiring the Account, Defendant engaged in collection activities, including reporting the Account to the CRAs. FAC, ¶¶22-23.

After Plaintiff learned of the negative credit reporting, she sent the Dispute Letter to Defendant notifying Defendant that she disputed the Debt. FAC, ¶¶23-26. On July 17, 2025, Defendant sent Plaintiff the Collection Letter, which enclosed documents allegedly validating the Debt. FAC, ¶30 & 40. On the same date that it mailed the Collection Letter to Plaintiff, Defendant updated its credit reporting with Transunion (a CRA), without communicating to Transunion that Plaintiff disputed the Debt. FAC, ¶53. Instead, Defendant communicated to Transunion that the "Account was ***previously in dispute – now resolved***. Reported by credit grant; >PLACED FOR COLLECTION<." *Id*. (emphasis added). At the time that Defendant reported to Transunion that Plaintiff "previously" disputed the debt, and her dispute was "now resolved" it did not know and

2

could not have known whether Plaintiff continued to dispute the Debt, or whether its response to her dispute vis-à-vis the Collection Letter had "resolved" the dispute with Plaintiff.

III. **ARGUMENT**

   A. **Defendant violated FDCPA, §1692e(8) by Falsely Indicating Plaintiff No Longer Disputed the Debt, and By Failing to Mark the Debt as Disputed**

Plaintiff's Complaint alleges that Defendant, knowing Plaintiff's Debt was disputed, made a false, deceptive or misleading representation by (1) failing to communicate that Plaintiff's disputed Debt was disputed when it updated Plaintiff's account information to Transunion, and (2) made false statements to Transunion regarding its resolution of Plaintiff's dispute. Section 1692e of the FDCPA prohibits a debt collector from using "… any false, deceptive or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This prohibition expressly includes, "communicating or threatening to communicate to any person credit information which is known, or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8).

   1. **Legal Authority Regarding a Debt Collector's Credit Reporting Obligations**

"Debt collectors violate § 1692e(8) when they report an alleged debt to credit reporting agencies but omit that the debtor disputes the debt." *Canady v. KAPS & CO (USA) LLC*, 2021 US Dist. LEXIS 148878, at *4-5 (N.D. Ala. Aug. 9, 2021) (citing *Carlisle v. Nat'l Comm. Servs., Inc.*, 722 Fed. App'x 864, 869 (11th Cir. 2018)(unpublished); *Evans v. Portfolio Recovery Assocs., LLC*, 889 F. 3d 337, 349 (7th Cir. 2018); *Sayles v. Advanced Recovery Sys., Inc.*, 865 F. 3d 246, 249-50 (5th Cir. 2017); *Wilhelm v. Credico, Inc.*, 519 F. 3d 416, 418 (8th Cir. 2008).) Where a consumer establishes that a debt collector reported a debt to a reporting agency without reporting it as disputed <u>after receiving a letter from the consumer disputing the debt, the consumer has established a prima facie case under §1692e</u>. *Lueck v. Bureaus, Inc.,* 2021 U.S. Dist. LEXIS

178592, *7 (N.D. Ill. Sept. 20, 2021) (citing 15 U.S.C., § 1692e(8); *Canady*, at *4. The FDCPA does not ordinarily require proof of intentional violation and is interpreted as a strict liability statute. *Bass v. I.C. Sys., Inc*., 316 F. Supp. 3d 1047, 1051 (N.D. Ill. 2018) (*quoting Wahl v. Midland Credit Mgmt., Inc.,* 556 F.3d 643, 646 (7th Cir. 2009)); *Hartman v. Meridian Financial Services, Inc*., 191 F. Supp. 2d 1031, 1046 (W.D. Wis. 2002) ("The court adds that, 'One false or misleading statement in a collection letter renders the entire communication false or misleading and constitutes one violation'").

A debt collector must follow reporting laws only if and when the debt collector *chooses* to so report. 15 U.S.C. §§ 1601-1693r; *see also, Kirkland v. I.C. Sys*., Case No.: 6:23-cv-00050-LSC, at *10-11 (N.D. Ala., June 6, 2024). This is to say, a debt collector has no statutory duty to proactively report, but it does have a §1692e(8) duty to report truthfully <u>if and when it does decide to credit report</u>. Nor must the consumer use exacting language to communicate that he or she disputes a debt, so long as a debt collector "should know" based upon the consumer's dispute, and so long as it is clear he or she does, in fact, take issue with the debt. *Id*. There is no magic word requirement (e.g., "dispute") to communicate a dispute.

A debt collector does not escape §1692e(8) responsibility because the debt collector believes that the dispute is without merit, substance, or lacks detail. "Nothing within the text of §1692e(8) requires the debtor's dispute to be valid or reasonable before triggering §1692e(8)'s protections." *Scaife*, at *11 (citing *Evans*, 889 F 3d at 346-47.)(emphasis added) A debt collector does not need to find the dispute valid or reasonable so long as the consumer simply makes it clear he or she disputes the debt. *Evans*, at 347.

4

> **2. Defendant Received the Dispute Letter, Understood Plaintiff Disputed the Debt, and Failed to Communicate the Dispute to Transunion, Instead Reporting the Dispute "Resolved" and "Previously in Dispute"**

Defendant received Plaintiff's Dispute Letter on June 20, 2024, and correctly understood it as Plaintiff communicating that she disputed the Debt. In response to Plaintiff's Dispute Letter, Defendant sent Plaintiff the Collection Letter. And, on the same date it sent Plaintiff the Collection Letter, instead of notifying Transunion that Plaintiff disputed the debt, Defendant notified Transunion that Plaintiff's Account was "previously in dispute," and that her dispute was "now resolved." FAC, ¶53. This statement was a false statement, and Defendant knew it was a false statement as it knew that Plaintiff was not aware of the results of its investigation, and Defendant had not afforded Plaintiff an opportunity to notify Defendant whether she acquiesced to the validation of her debt, or if she could provide the additional information related to her dispute to Defendant.

Defendant's violation of §1692e(8) is thus two-fold: ***First***, Defendant did not ever communicate Plaintiff's dispute to Transunion. ***Second***, Defendant's communication to Transunion that Plaintiff's Account was "previously in dispute," and that the dispute was "now resolved" was a false statement that Defendant knew or should have known to be false, as it had not yet notified Plaintiff that it . And, the FDCPA is clear, "[d]ebt collectors may not make false claims, **period**." *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004) (emphasis added).

Defendant's representation to Transunion account information that was false, deceptive, and misleading in direct violation of the plain meaning of §1692e as enumerated in §1692e(8). The operative word "is" in §1692e(8) stating "… including the failure to communicate that a disputed debt **is** disputed" requires reporting of nothing less than the current dispute status at the time of the reporting. §1692e(8) (emphasis added). Defendant knew Plaintiff disputed the Account, understood that using a Metro 2 code indicating that a dispute was resolved would report the

5

resolution of a dispute to TransUnion, and recognized that TransUnion would report the resolution of that dispute to Plaintiff's potential creditors.

Defendant may argue that it was using a code permitted under Metro 2 or the Consumer Data Industry Association's *Credit Reporting Resource Guide* (the "CDIA"), but these guidelines do not shield it from liability under the consumer protection statutes. *See Coulter v. Chase Bank USA, N.A.*, 2020 US Dist. LEXIS 179895, at *12 (E.D. Pa. Sept. 20, 2020) (listing cases)." *Jackson v. Ray Klein, Inc.*, 20-cv-1367, at *4 (N.D. Ill. Aug. 12, 2021). Coulter stated that CDIA guidelines do not necessarily reflect or comply with the federal statutes such as the FCRA and FDCPA and federal courts have rejected the proposition "that adherence to these industry guidelines shields it from [federal statutory] liability" noting, "the relevant case law plainly runs counter to this argument." *Coulter*, at *12

The law does not defer to Defendant or the collection industry to police itself. Compliance practices must align with the FDCPA, not the other way around. The FDCPA does not accommodate Defendant's choice to use specific reporting codes; and claim that Defendant's was "required" to use a particular code is fiction (and belied by its use of the resolution code prior to notifying Plaintiff of the results of its dispute). The FDCPA offers various ways to comply without resorting to misleading codes. Defendant could simply tell the CRAs the debt is disputed without using any code. Or, Defendant could simply not report on the Account at all. Defendant chose to report and its self-imposed limitations regarding codes are not the problem of Plaintiff, but of Defendant.

Any false dilemma claimed by Defendant on reply will call to mind the Eleventh Circuit's opening reference in *Edwards v. Niagara Credit Solutions, Inc.*, to the "oft-repeated" statement from the Vietnam War "...we had to destroy the village to save it." (*Edwards*, 584 F. 3d 1350

(11th Cir. 2009). In *Edwards*, a debt collector faced FDCPA claims for failing to identify itself in voicemails. The debt collector argued that although § 1692e(11) requires it to identify itself as a debt collector in consumer communications, § 1692c(b) required it to avoid any disclosure of its identity to anyone who is not the consumer, leaving it no choice but to not identify itself in the event a third party might hear the voicemail. *Id*. The debt collector was essentially claiming "we had to violate the FDCPA to follow the FDCPA." But the Court disagreed, rightly pointing out that there was a third option, <u>simply to not leave a voicemail at all. Nothing in the FDCPA compelled the debt collector to leave a voicemail</u>. There was no conflict within the statute. Here, the logic is exactly the same. Defendant cannot be excused by any dilemma it imposes on itself, especially where it could simply have not reported as there is nothing in the FDCPA compelling it to do so. Defendant was not, therefore, obligated to use any industry standard or coding system. It did so voluntarily, and incorrectly. There were numerous other methods and means it could have used to report, or even not report at all.

### 3. The Seventh Circuit Reversed the District Court in *Wood v. Security Credit Services*, the Primary Case Relied Upon by Defendant

This case is on all fours with the Seventh Circuit's recent ruling in *Wood v. Sec. Credit Servs., LLC*, 126 F.4th 1303, 1311. In *Wood*, a debt collector acquired Wood's consumer debt after he had disputed the debt with the original creditor. *Id*., at 1305. The original creditor responded to the dispute, and then sold Wood's account to the defendant. *Id*. The defendant began reporting the account without communicating the dispute, and Wood sued the defendant. *Id*. The district court granted summary judgment in favor of the debt collection reasoning that because Wood did not reply to the original creditor's investigation response, the debt collector who subsequently purchased Wood's debt had no reason to know that Wood continued to dispute the debt. *See, Wood v. Sec. Credit Servs., LLC*, 2023 WL 3614919, at *4 (N.D. Ill. May 23, 2023). Wood appealed.

7

On appeal the Seventh Circuit found a fact issue related to the defendant's use of the purported dispute codes – XB, XC and XH – and that the debt collector's use of the codes may not have aligned with what it "knew or should have known" related to whether Wood disputed the claim, continued to dispute the claim after resolution, or whether the dispute was resolved. *Wood v. Sec. Credit Servs., LLC*, 126 F.4th at 1307, 1312. The appellate court then reversed the district court's grant of summary judgment because it "disagree[d] with the district court's conclusion that [the plaintiff's] claim faile[d] because of his silence after [the debt collector's] letter was an indication that he no longer disputed the debt." *Id.,* at 1311. The court concluded that the debt collector "has not presented evidence of industry practice or legal authority indicating that silence in response to a similar letter should be treated as agreement with the lender's investigation regarding the validity of the debt." *Id*.

In the instant matter, Defendant's conduct is far more black-and-white than the defendant's conduct in *Wood*, as here Defendant reported to Transunion that Plaintiff's dispute was "resolved" prior to ever notifying Plaintiff of the results of its investigation. The Dispute Letter triggered a legal obligation on Defendant to conduct an investigation, and Defendant admits it did not notify Plaintiff of the results of its dispute prior to notifying Transunion that Plaintiff's dispute was resolved. Consequently, Defendant's argument fails on its face. Specifically, (1) Defendant did not ever report to the CRAs that the Subject Debt was disputed, (2) its statement that it Plaintiff's Account was "previously in dispute" was a false statement in connection with collection of a debt, (3) its statement that Plaintiff's dispute was "now resolved" was a false statement, as Plaintiff was unaware of the results, and (4) a notation that a debt was "previously in dispute" is not a notation that the debt is disputed. Each of these communications were violations of section 1692e(8).

8

Defendant has not established any fact that would justify dismissal of Plaintiff's claim. It has simply challenged Plaintiff's allegations to justify its violative behavior

Defendant has continued to refuse to mark Plaintiff's account as disputed even though from day one through today Plaintiff has properly disputed the Account. Defendant violated the plain text of 1692e and 1692e(8) when it reported Plaintiff's dispute of the Debt to Transunion as a resolved prior it ever reporting the results of the investigation to Plaintiff, instead of "as disputed," and, as Defendant knew or should have known, Transunion published Defendant's statements on Plaintiff's credit report.

### B. Defendant's Arguments Regarding Plaintiff's ICAA Claim Fail as the Arguments Rely Entirely on the Successful Dismissal of the FDCPA Claim

Defendant's sole argument in dismissal of Plaintiff's ICAA claim is that pursuant to 205 ILCS 740/60, a "collection agency or debt buyer shall not be subject to civil liability for its failure to comply" with the terms of ICAA "if the collection agency or the debt buyer can demonstrate compliance with comparable provisions of the" FDCPA. As discussed above, Defendant has not and cannot establish compliance with FDCPA, section 1692e(8). Consequently, its efforts to dismiss Plaintiff's ICAA count should be denied.

WHEREFORE, for the reasons set for the above, Plaintiff respectfully requests that the Court deny Defendant's motion in its entirety..

Dated: June 2, 2025

Respectfully submitted,

By:    /s/ *Seth McCormick*
One of Plaintiff's Attorneys

Seth McCormick
HARRER LAW, P.C.
650 Warrenville Road, Suite 100
Lisle, IL 60532
Tel. 312-858-3239
Fax 312-610-5646
seth@harrerlaw.com

## **CERTIFICATE OF SERVICE**

      I, Seth McCormick, hereby certify that on June 2, 2025, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all attorneys of record.

                                              /s/ *Seth McCormick*
                                              Seth McCormick